UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

TEWHAN BUTLER,

                              Petitioner,

      -against-                                            9:18-CV-1354 (LEK)

WARDEN, FCI Ray Brook,

                              Respondent.
_____

**DECISION AND ORDER**

## I. INTRODUCTION

Petitioner Tewhan Butler, serving a sentence in the custody of the Bureau of Prisons ("BOP"), seeks a writ of habeas corpus under 28 U.S.C. § 2241 challenging the BOP's computation of his good conduct time ("GCT"). Dkt. Nos. 1 ("Petition"), 1-1 ("Memorandum"), 1-2 ("Petitioner Exhibits"). Respondent opposed the Petition and submitted relevant records. Dkt. Nos. 7 ("Opposition"), 7-1 ("Respondent's Exhibits"). Petitioner filed a reply. Dkt. Nos. 9 ("Traverse"), 9-1 ("Reply Exhibits").[1] For the reasons explained below, the Petition is dismissed.

## II. RELEVANT BACKGROUND[2]

### A. New Jersey State Charges

Petitioner was the leader of the a street gang called the Double II Bloods since the 1990s. Sentencing Tr. at 22–25. Before his federal indictment in this case, he was arrested on various

---

[1] Respondent's attached exhibits include an affidavit from Forest Kelly, Correctional Program Specialist with the BOP, Dkt. No. 7-1 at 2–4 ("Kelly Affidavit"). Petitioner's Reply Exhibits include his affidavit. Dkt. No. 9-1 at 1–2 ("Petitioner's Affidavit"). Petitioner's federal Sentencing Transcript is Dkt. No. 1-2 at 2–57.

[2] Citations to the filings in this case refer to the pagination generated by CM/ECF, the Court's electronic filing system.

state charges. On both January 27, 1998, and April 30, 2002, Petitioner was arrested and promptly released from custody. Dkt. No. 7-1 at 34–35 ("BOP Administrative Decision"). On October 21, 2000, Petitioner was again arrested, later indicted, and ultimately released on bail on June 15, 2001. Id.; see also Resp.'s Exs. at 14.

Most importantly, on October 1, 2002, Petitioner was arrested in connection with several different criminal charges that gave rise to two indictments. Kelly Aff. ¶ 6; Traverse at 1; Reply Exs. at 5. The first indictment, No. 03-06-020761, returned on June 5, 2003, charged Petitioner with murder, robbery, and unlawful possession of a weapon. Kelly Aff. ¶ 6; Reply Exs. at 3–4. A state jury acquitted Petitioner of these charges on September 24, 2004. Reply Exs. at 1, 3.

The second indictment, No. 04-09-2967, returned on September 2, 2004, charged Petitioner with various drug offenses. Kelly Aff. ¶ 6; Reply Exs. at 5. On September 22, 2005, Petitioner pled guilty to that indictment, Kelly Aff. ¶ 7; Reply Exs. at 2, and was sentenced to five years in the custody of the New Jersey Department of Corrections ("NJDOCS"). Resp.'s Exs. at 14; Reply Exs. at 5. Petitioner's state sentence would expire on September 30, 2007. Dkt. No. 7-1 at 19 ("NJDOCS Final Discharge Notice").

### B. Federal Guilty Plea and Sentence

Meanwhile, Petitioner was indicted with federal charges in the United States District Court for New Jersey. On September 21, 2006, while serving his state sentence, he pled guilty to Racketeering in violation of 18 U.S.C. § 1962(c). Sentencing Tr. at 22–25; Kelly Aff. ¶ 5; Dkt. No. 7-1 at 12–17 ("Amended Judgment"). Petitioner was sentenced on April 16, 2007. Sentencing Tr. at 46; Kelly Aff. ¶ 9; Am. Judgement at 14. By then, he had already served 54

months on his state sentence. Sentencing Tr. at 48–49. In imposing the federal sentence, the district judge stated:

> It is the intention of this [c]ourt that [Petitioner] be imprisoned for a term of 360 months for the offenses to which he has pleaded guilty . . . This sentence of 360 months shall run concurrently with the undischarged state term of imprisonment in the State of New Jersey for State Indictment Number 04-09-2967, and for which [Petitioner] has already served 54 months . . . Pursuant then to U.S. Sentencing Guidelines, Section 5G1.3, [the court] hereby adjusts the 30-year sentence to reflect a credit for the 54 months served as of April 16, 2007, in the Custody of the New Jersey Department of Corrections. [Petitioner] is hereby committed to the Custody of the Bureau of Prisons to be imprisoned for the remaining term of 306 months. Said sentence shall continue to run concurrently to the remainder of the [state] sentence[.]

Id.; see also Kelly Aff. ¶ 9. The court directed the BOP to credit 238 days against Petitioner's sentence "to reflect the time [he] spent in the custody of the [state] Essex County Jail [from his detention on October 21, 2000] until he was release[d] on bail on June 15, 2001." Sentencing Tr. at 50. Finally, the Court stated it "anticipate[d] that all good time calculations by the Bureau of Prisons shall be made on the full 30-year [360-month] term of imprisonment that [the court] ha[s] imposed." Id.[3]

### C. The BOP's GCT Calculation

The BOP determined Petitioner's projected release date based on the 306-month term he was sentenced to serve in federal custody, beginning April 16, 2007. Kelly Aff. ¶ 11. First, it awarded 243 days of credit for the time Petitioner spent in state custody that was not credited

---

[3] The government objected to the court's direction on the calculation of good time by stating "that it [wa]s the government's understanding that good time credit begins to be accrued, if at all, one year after the time that [Petitioner] enters into Bureau of Prisons' custody" and that Petitioner was "not entitled to . . . good time credit for the time he has currently spent in state prison." Sentencing Tr. at 54.

toward his state sentence. Id.; see also BOP Admin. Dec. 34. Second, and most pertinent here, it concluded that "Petitioner is currently eligible to receive a total of 1,116 days of GCT credits" and "is currently scheduled to release from [BOP] custody . . . on January 25, 2029." Kelly Aff. ¶ 11. Petitioner properly grieved his GCT computation through BOP's administrative channels. Id. ¶ 12; Resp.'s Exs. at 34–43. He claimed that he should have been given GCT credit for the 54 months the court subtracted from his federal sentence for the time he was in state custody. Id. at 36–37, 39–40, 42–43. The BOP denied Petitioner's grievances. BOP Admin. Dec. at 34–35.

### D. This Petition

Petitioner now requests that the Court direct the BOP to award him GCT credit on the 360-month "sentence" pronounced by the sentencing judge, including his 54 months in state custody before his federal sentencing. Pet. at 9; see also Sentencing Tr. at 4–5. Respondent (incorrectly, we will see) accepts that Petitioner's sentence was 360 months, but argues that Petitioner can only receive GCT based on the time he spends in federal custody. Opp'n at 2, 4–5.

## IV. APPLICABLE LAW

### A. Habeas Corpus

Habeas corpus relief is available for prisoners "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A prisoner may petition pursuant to 28 U.S.C. § 2241 to challenge the execution of his or her sentence, including the calculation of GCT. See Adams v. United States, 372 F.3d 132, 134–35 (2d Cir. 2004) (citing Nash, 245 F.3d at 146); see also Cook v. N.Y.S. Div. of Parole, 321 F.3d 274, 278 (2d Cir. 2003) (explaining that a petitioner can use § 2241 to challenge a federal official's computation of a sentence, parole decisions, or prison disciplinary actions). Petitions filed under § 2241 must

name the Petitioner's warden as respondent and be filed in the district where the Petitioner is confined. 28 U.S.C. § 2241(a); Rumsfeld v. Padilla, 542 U.S. 426, 435, 447 (2004). Since Petitioner is incarcerated at FCI Ray Book, in the Northern District of New York, he may therefore petition this Court under § 2241 to challenge the calculation of his GCT.

### B. Measuring a Federal Prison Sentence

18 U.S.C. § 3585 defines a sentence of imprisonment as follows:

(a) Commencement of sentence. — A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

(b) Credit for prior custody. — A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences–

(1) as a result of the offense for which the sentence was imposed; or

(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

that has not been credited against another sentence.

"The Attorney General, through the BOP, possesses the sole authority to make [prior custody] credit determinations pursuant to 18 U.S.C. § 3585(b)." United States v. Whaley, 148 F.3d 205, 206 (2d Cir. 1998) (citing United States v. Wilson, 503 U.S. 329, 333 (1992)). The BOP "may grant a[n inmate] credit against his federal sentence for time served in custody prior to sentencing in district court" only if the "presentence custody has not been credited against another sentence." Lopez v. Terrell, 654 F.3d 176, 178 (2d Cir. 2011); United States v.

Labeille–Soto, 163 F.3d 93, 99 (2d Cir.1998) ("[A] defendant has no right to credit on his federal sentence for time that has been credited against his prior state sentence.").

"If a defendant's presentence custody has been credited to another sentence," like Petitioner's state sentence, "no § 3585(b) credit is available, but the Sentencing Guidelines provide a functional equivalent." Id. at 178. Section 5G1.3(b) of the United States Sentencing Guidelines (the "Guidelines") provides that when a defendant is serving a "term of imprisonment [that] resulted from another offense that is relevant conduct[4] to the instant offense of conviction . . . the court shall adjust the sentence [for the instant offense] for the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the [BOP]." U.S.S.G. § 5G1.3(b). "Section 5G1.3(b) of the Guidelines therefore applies where a defendant faces punishment for the same criminal conduct in two prosecutions and ensures that the defendant receives credit for time already served to eliminate double punishment." Lopez, 654 F.3d at 179 (citation omitted); see also United States v. Gonzalez, 192 F.3d 350, 354 (2d Cir. 1999) (holding that because the defendant's presentence custody was credited to his state sentence, no § 3585(b) credit was available; thus, U.S.S.G. § 5G1.3(b) applied).

A comment to § 5G1.3, comment 2, gives an example where subsection (b) would apply:

> The defendant is convicted of a federal offense charging the sale of 90 grams of cocaine. Under § 1B1.3, the defendant is held accountable for the sale of an

---

[4] "Relevant conduct" is defined in § 1B1.3 to include "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." "Relevant conduct" is used to determine the defendant's guideline range and, therefore, is a factor in determining his sentence.

6

> additional 25 grams of cocaine, an offense for which the defendant has been convicted and sentenced in state court. The defendant received a nine-month sentence of imprisonment for the state offense and has served six months on that sentence at the time of sentencing on the instant federal offense. . . . The court determines that a sentence of 13 months provides the appropriate total punishment.

§ 5G1.3 cmt. 2(d). In that case, "[b]ecause the defendant has already served six months on the related state charge as of the date of sentencing on the instant federal offense," the court should impose "a sentence of seven months . . . to run concurrently with the three months remaining on the defendant's state sentence" to "achieve[ ] this result." Id. It may not, however, impose a sentence of 13 months and "backdate" it to begin when the defendant was arrested on the state charges. Gonzalez, 192 F.3d at 353. A court cannot order a federal sentence to have commenced before it was imposed. Id.

The BOP may give prisoners time off their sentence ("Good Conduct Time") if they comply with BOP institutional rules while in custody. 18 U.S.C. § 3624(b) governs the award of GCT. It provides:

> [A] prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations.

Id.

A sentencing *adjustment* imposed by a court under the sentencing guidelines, § 5G1.3(b), and a sentence *credit* given by the BOP under federal statute, § 3585(b), both have the effect of

reducing the time a prisoner must serve in prison. However, they have different implications for the calculation of GCT. As the Second Circuit has explained:

> Where an inmate is in custody prior to being sentenced, two possible scenarios arise. In the first, if a defendant is arrested for a federal offense and placed in presentence custody, the BOP will typically grant the defendant a credit against his sentence under 18 U.S.C. § 3585(b) for that period . . . .
>
> In contrast, the second scenario arises when a defendant is convicted and sentenced in state court, and, while serving his state sentence, is indicted federally and sentenced in district court for an offense for which the relevant conduct includes his prior state conviction. Under these circumstances . . . because the defendant's presentence custody has already been credited against another sentence—namely, the defendant's state sentence—the agency is prohibited from crediting that time against his federal sentence. 18 U.S.C. § 3585(b) . . . To ensure that the defendant does not face punishment for the same criminal conduct in two prosecutions . . . however, the Sentencing Guidelines instruct the district court to adjust the defendant's federal sentence based on the time already served on his state sentence, since that period of custody cannot be credited by the BOP under § 3585(b) . . . . When the BOP calculates GCT, therefore, it will count only the period of incarceration following the date of sentencing in district court because that term of imprisonment constitutes the defendant's federal sentence. . . . The agency will not award GCT for any presentence time in custody adjusted under U.S.S.G. § 5G1.3(b) because that time does not constitute part of the defendant's federal sentence having already been credited to the defendant's state sentence.

Lopez, 654 F.3d at 184–85 (internal quotation marks and citations omitted). In other words, the BOP may award "GCT for presentence custody where a defendant receives a § 3585(b) credit, but not where a defendant receives a U.S.S.G. § 5G1.3(b) adjustment." Id. at 187.

V.     DISCUSSION

As the BOP concluded, Petitioner's case falls into the second category contemplated by Lopez; he received a § 5G1.3(b) adjustment. BOP Admin. Dec. at 34. He was arrested on October

8

1, 2002 in connection with various state charges and, on February 10, 2006, was sentenced to five years in New Jersey state prison. Reply Exs. at 5 ("State Court Judgment"). When the New Jersey District Court imposed his federal sentence on April 16, 2007, he had already served 54 months in state custody that was credited toward his state sentence. Sentencing Tr. at 48–49.[5] Under § 3585(b), the BOP could not credit that 54 months against Petitioner's federal sentence. Nevertheless, the state crimes were relevant conduct "included in [Petitioner's federal] crime of conviction;" therefore, the sentencing court factored them into his federal sentence.[6] Sentencing Tr. at 47. The sentencing court

---

[5] Petitioner contends that he was in federal custody since his September 24, 2004 acquittal on his first state indictment charging murder. Traverse at 3–4 ("[P]etitioner was not serving any sentence when a federal detainer was placed on him, therefore the federal authorities assumed jurisdiction of his person following his acquittal on state murder charges.").

However, Petitioner is mistaken. First, New Jersey had primary jurisdiction to hold Petitioner until his five-year state sentence expired. See Cruz v. Walsh, 633 F. App'x 794, 795 (2d Cir. 2015) (summary order) ("New York gained primary jurisdiction over Cruz when he was arrested pursuant to a New York warrant, retained that jurisdiction throughout his federal proceedings, and did not relinquish that jurisdiction until he had completed his state sentence[]."); see also In re Liberatore, 574 F.2d 78, 89 (2d Cir. 1978) (holding that primary "jurisdiction is not exhausted until there has been complete compliance with the terms of, and service of any sentence imposed by, the judgment of conviction entered against the [petitioner] by the courts of that first sovereignty"). Second, as his counsel argued and the New Jersey federal district judge found at his sentencing, he spent those 54 months from October 2002 to April 2007 in state custody, and that time was credited toward his five-year state drug sentence. Sentencing Tr. at 10 (counsel arguing that the 54 months should be credited under § 5G1.3(b)), 48–49 (court stating that Petitioner had "already served 54 months" of an "undischarged state term of imprisonment . . . for state indictment number 04-09-2967); NJDOCS Final Discharge Notice (stating that Petitioner's state sentence expired on September 30, 2007).

[6] Petitioner pled guilty to Racketeering under 18 U.S.C. § 1962(c), which means he admitted to "participat[ing] . . . in the conduct of [an] enterprise's [the Double II Blood's] affairs through a pattern of racketeering activity." Petitioner's state crimes were "racketeering activity" that formed the basis of his federal offense. Traverse at 5 ("[P]etitioner's federal racketeering charges were part and parcel of the state offenses based on the time frame when the offenses were committed."); Am. Judgment at 12 (stating that the racketeering activity spanned from 1993 through October 14, 2004); Sentencing Tr. at 23–24 (describing Petitioner's drug crimes as part of the racketeering offense).

9

believed that Petitioner should be incarcerated for 360 months for the conduct underlying both his federal and state convictions. Id. at 46–47. However, if the court sentenced Petitioner to a 360-month prison term, Petitioner would have had to serve 360 months *from April 16, 2007*—that is, until April 16, 2037, minus GCT and 243 days of prior custody credit—in prison: approximately 54 months *more* than he is currently set to serve. See Gonzalez, 192 F.3d at 353; Kelly Aff. ¶ 11 (noting that Petitioner's federal sentence commenced on April 16, 2007 and is projected to expire in 2029). As § 5G1.3(b) recognizes, this would amount to unfair double-punishment (of 54 months) for the same conduct underlying both his federal and state sentences. To avoid that result, the court followed § 5G1.3(b) and reduced the 360 sentence she otherwise would have imposed by 54 months, imposing a 306-sentence. Sentencing Tr. at 49; Am. Judgment at 14.[7]

Petitioner argues that the district judge imposed a 360-month term of imprisonment and backdated it to his October 2002 arrest on the state charges; therefore, he reasons, the 54 months he spent in state custody is part of his federal sentence and should factor into his GCT calculation. His confusion is understandable; the sentencing judge may have shared it. At various points, she referred to 360 months as Petitioner's "sentence," and stated that she "anticipated] that all good time calculations by the Bureau of Prisons shall be made on the full 30-year [360-month] term of imprisonment that [the court] ha[s] imposed." Sentencing Tr. at 45, 50. However, as explained earlier, the sentencing judge could not backdate Petitioner's sentence; therefore, a 360-month

---

[7] The sentencing judge followed the steps outlined in § 5G1.3(b), Comment 2, to adjust Petitioner's sentence. She identified (1) the appropriate subsection, 5G1.3; (2) the amount of time the sentence was being adjusted, 54 months; (3) the undischarged term of imprisonment for which the adjustment is being given, New Jersey Indictment No. 04-09-2967; and (4) that the sentence imposed constitutes an adjustment of an otherwise appropriate thirty year term. See Sentencing Tr. at 49.

sentence would have run from April 2007—an outcome the sentencing judge clearly did not intend. See Gonzalez, 192 F.3d at 353 (explaining that, because the sentencing court futilely attempted to "backdate" the defendant's sentence "to the date of his arrest" on state charges, the defendant would "serve a sentence that is approximately 27 months longer than the district court apparently intended" if the sentence were affirmed). Indeed, the Amended Judgment indicates a sentence of 306 months. Am. Judgment at 14 ("The defendant is hereby committed to the custody of the [BOP] for a term of 306 months, to run concurrently with the remainder of defendant's sentence on State of New Jersey Indictment No. 04-09-2967.").[8]

The Second Circuit reviewed a similar record in Lopez. There, the district judge "determined . . . that Lopez was eligible for a 94-month adjustment under U.S.S.G. § 5G1.3(b) based on presentence state custody." Lopez, 654 F.3d at 179. At the sentencing hearing, the court "imposed a 132–month term of imprisonment to run concurrent with Lopez's state conviction, 'with a credit for time served in state and federal custody from [August] 11, 2000.'" Id. As here, it later "clarified in its written judgment that the term of imprisonment was 132 months, minus 94 months for time already served, which resulted in an actual term of 38–months imprisonment." Id. Then:

> the BOP calculated Lopez's GCT based solely on the 38 months of imprisonment he served following the date of sentencing because under § 3585(a), this term of imprisonment constituted Lopez's federal sentence. The agency excluded from its GCT calculation the 94 months of imprisonment Lopez served in state and federal custody prior to sentencing, reasoning that under § 3585(b), those months of imprisonment could not form part of Lopez's federal sentence because they had already been credited to his state sentence.

---

[8] As the BOP and the government note, there was another problem with the sentencing judge's assumption; until July 19, 2019, a prisoner was only entitled to GCT based on the time he actually served—not based on the entire sentence imposed. See Barber v. Thomas, 560 U.S. 474, 482–83 (2010).

Id. Like Petitioner, Lopez argued "that he should receive GCT based on the 132–month term originally announced by the district court at his sentencing hearing." Id. at n. 5.

The Second Circuit rejected this argument; the court found it "incontrovertible that Lopez's federal sentence was 38 months," as Lopez's "sentence could not begin prior to when he was sentenced in district court." Id. (citing United States v. Labeille–Soto, 163 F.3d 93, 98 (2d Cir. 1998) for the proposition "that a federal sentence cannot commence prior to the date on which it is imposed"). Thus, the BOP was correct to exclude the 94 months of presentence state custody from the GCT calculation. Id. So too here. Although the district judge initially stated that the sentence was 360 months with 54 months' "credit," the Amended Judgment clarifies that she intended to impose a 306 month sentence. Am. Judgment at 14. As in Lopez, the BOP correctly projected GCT based on the adjusted 306-month sentence, and appropriately excluded the 54 months of presentence state custody from the equation. Lopez, 654 F.3d at 184–85 & n. 5.

The Court notes that on July 19, 2019, the First Step Act went into effect and amended 18 U.S.C. § 3624(b)(1) to change the way good-time credit must be calculated. United States v. Scouten, No. 13-CR-20, 2019 WL 1596881, at *1 (W.D.N.Y. Apr. 15, 2019).[9] It now permits the BOP to award up to 54 days of GCT "for each year of the prisoner's sentence imposed by the court" instead of "each year of the prisoner's term of imprisonment," First Step Act § 102(b)(1)(A)(i). This means that the BOP will calculate GCT based on a prisoner's whole sentence, not just the time a prisoner actually serves, "effectively abrogating Barber v. Thomas."

---

[9] "Enacted in 2018, the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194, was the result of a bipartisan legislative effort to moderately overhaul the criminal justice system. . . . The Act modified prior sentencing law and expanded vocational training, early-release programs, and other programing designed to reduce recidivism." Handford v. Spaulding, No. 19-CV-434, 2019 WL 2122930, at *4 (N.D.N.Y. May 15, 2019) (citations omitted).

Hoenig v. United States, No. 19-CV-374, 2019 WL 2006695, at *1 (N.D. Tex. May 7, 2019). Thus, it appears that under the First Step Act, a 10-year sentence now yields a maximum GCT of 540 days (54 x 10), rather than the maximum of 470 days it would have yielded under the method described in Barber, 560 U.S. at 479.

While the First Step Act may change other aspects of Petitioner's GCT calculation, it does not entitle him to GCT based on his 54 months in state custody, or based on a 360-month sentence. As in Lopez, the "sentence imposed by the court" was the adjusted sentence—here, 306 months, not 360 months. See above at 10–12; see also Lopez, 654 F.3d at 184–85 & n. 5 (explaining that the sentence as adjusted under U.S.S.G. § 5G1.3(b) is "sentence imposed by the district court"). Therefore, the First Step Act does not save the Petition.

## V.  CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Petition (Dkt. No. 1) is **DENIED AND DISMISSED** in its entirety; and it is further

**ORDERED**, that no Certificate of Appealability ("COA") shall issue because Petitioner has not made a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires, Miller-El v. Cockrell, 537 U.S. 322, 336 (2003); and it is further

**ORDERED**, that the Clerk serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

DATED:	August 05, 2019
	Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge